THE CITY OF ELIZABETH, PLAINTIFF AND PLAINTIFF IN ERROR, v. THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, DEFENDANT AND DEFENDANT IN ERROR.

Submitted March 3, 1910—Decided June 20, 1910.

1. In 1765 the colonial legislature laid out a public highway ending at Staten Island sound. The defendant having taken possession of lands along the shore front, plaintiff brought ejectment, claiming that a portion of the land was part of the highway, and produced evidence from which an inference would be justified that the present location of the high-water mark of the sound is the same as it was when the road was laid out. The defendant offered a map prepared in 1891, on which a line was portrayed as showing high-water mark according to survey by the United States Coast Survey in 1835-6, which, if correct and properly placed on the map, indicated that at that time the high-water line was so far north of the present line as to exclude the *locus in quo* from the boundary of the highway. There was no proof of the correctness of the United States Coast Survey as applied to the map, nor was the original survey produced. The trial court assumed its correctness, and, giving to it a conclusive effect, directed a verdict for defendant. *Held*, that even if the map was admissible it was not conclusive, and that a direction for defendant based upon the conclusiveness of the map was error.

2. An admission, contained in an information filed by the attorney-general on the relation of plaintiff to vacate a riparian grant, that the original water line was so located as to exclude the *locus in quo* from the highway does not estop the plaintiff, in the ejectment suit, from showing the true location of the water line.

3. Where a highway is dedicated to the water line of a navigable stream by legislative act it is carried by operation of law to the water line however it may change by accretions or reclamation, and where, in a suit to recover possession of part of such highway, the defendant sets up a grant from the state of land within such extension but below the original high-water line, the duty of establishing the original high-water mark is upon the defendant.

On error to the Union County Circuit Court.

For the plaintiff in error, *James C. Connolly* and *Frank Bergen.*

For the defendant in error, *George Holmes* and *Richard V. Lindabury.*

The opinion of the court was delivered by

BERGEN, J. This is an action in ejectment instituted by the city of Elizabeth to recover possession of land claimed to be part of an ancient highway or street, now named Elizabeth avenue. The land in dispute is a tract ninety-four feet wide, bounding on Staten Island sound, and extending thence northerly about one hundred and thirty-two feet. To support its claim the city undertook to show that the highway was originally laid out to high-water line of Staten Island sound, the Supreme Court having, in a review of this case on rule to show cause (24 *Vroom* 491), held that the defendant, by virtue of a grant to it by the riparian commissioners, had title "to so much of the *locus in quo* as lies below the original high-water mark." The correctness of the construction of the grant by the Supreme Court is here questioned by the plaintiff in error (the city), but its consideration at this time is not necessary, for it in no way influenced the action of the trial court now complained of, and the case can be properly disposed of without determining that question. The trial court directed a verdict for the defendant upon the ground that on a map, claimed to be in evidence, the original high-water mark appeared to be above the property described in the declaration in this suit, and as we think the direction of the verdict, upon the ground stated, was error, the effect of the grant becomes unimportant in the present state of the case. In support of the claim that the original highway extended to the sound, the plaintiff relied upon a colonial act passed June 20th, 1765, which vacated a part of the highway "as it now goes through the tract aforesaid," and laid out a new road from "the north side of the Point House, over the bridge aforesaid to the place

where the road from Elizabeth Town enters the tract afore-said." *Allison's Laws,* 269. This act the Supreme Court held, on the review of this case above referred to, warranted the inference that the road extended to the then high-water mark of the sound. In addition to the act mentioned the plaintiff offered in evidence a map of the property made by Joseph De-Camp in 1797, on which the highway across the "Point Tract" is delineated as running from the shore of the sound to a stone monument marked "R. T. 1691," and also other maps and deeds from which an inference may be properly drawn that the old highway ran to the sound. The plaintiff offered other deeds and maps tending to show the same result, and in one of these deeds dated in 1802, the description begins on the east side of the road opposite the stone monument and runs along that side of the road "to the edge of the sound." The distance along the road from the monument to the sound given in this deed is thirty-four chains and sixty-eight links, and a measurement of the distance between the old monument and the edge of the sound, made just before the first trial of this cause, shows that it is now substantially the same as described in the deed of 1802, so that at the close of plaintiff's case the evidence would support a finding that the highway was originally laid out to the high-water line of the sound, and that the length of the road from the undisputed monument set in 1690 or 1691, to the present high-water line of the sound, is the same as it was between that monument and the high-water line of the sound as shown on the map made by Joseph DeCamp in 1797, and by the deed of 1802, which would place the original high-water line below the *locus in quo.*

In support of the verdict, as directed, the defendant insists that the evidence introduced by it conclusively demonstrated that the original high-water mark was north of the *locus in quo,* and that the disputed land has been reclaimed from the sound by accretions caused by tidal influences since the highway was laid out. The reasons urged for this claim will be considered in the order presented in defendant's brief. *First,* that in an information filed by the attorney-general of the state on the relation of the city of Elizabeth against the Cen-

tral Railroad Company of New Jersey, the American Dock and Improvement Company, the Central New Jersey Land and Improvement Company, and the Elizabethport and New Jersey Ferry Company, to revoke so much of the riparian grant as purported to convey to the defendant part of the highway, it was alleged that since the making of the grant the defendant had taken and held "exclusive possession of that part of the said common highway lying below original high-water mark," following which was a description of the *locus in quo.* This the defendant claims is an admission by the city that the *locus in quo* is below the original high-water line which it is now estopped from denying. As to this claim it is enough to say that such statement, if evidential at all against the plaintiff in error, was certainly not conclusive of the question of fact, and hence could not support the direction of a verdict in the present case. The relief there sought was the revocation of a grant alleged to have been made upon a false suggestion by the grantee. Whether such an admission is admissible as evidence need not be considered, as no objection was made by the plaintiff to its introduction, but there is authority against its competency. *Vanneman* v. *Building Association,* 15 *Stew. Eq.* 263, and the reporter's notes; *Elliott* v. *Hayden,* 104 *Mass.* 180. Clearly it is not conclusive, as defendant claims, and if competent its weight was to be determined by the jury.

The second point is that on a map said to have been made by Jacob M. Clark, in 1891, there is displayed a line marked "ordinary high-water mark by the U. S. Coast Survey, 1835-6," which indicates that at that time such line was north of the *locus in quo.* Whether this map was offered in evidence is disputed, but in the determination of this case we will assume it was. This map, if proved, would tend to show that according to the United States Coast Survey the line of the high water in 1835-6 was north of the *locus in quo,* and if it stood without contradiction, would dispose of this case against the plaintiff. But we do not find any evidence in the case which proves that the line of the United States Coast Survey of 1835-6 was properly put on the map. What appears to have been done was the tracing on a map, prepared in 1891,

of a line supposed to represent the location of the high-water mark in 1835-6. There was no proof of the survey, nor production of original maps, to verify the correctness of that line, and if evidence at all, it is not conclusive, yet the trial court accepted this map as evidence conclusively overthrowing plaintiff's case, and relied upon it when directing a verdict for defendant, saying: "Here is a map offered in evidence which shows the ordinary high-water mark to be above the property described in this suit; and, in view of the fact that all of this property was below ordinary high-water mark, I feel constrained to say that the only thing you can do is to find a verdict for the defendant." Everything in the case was discarded except a map of doubtful evidential value, and it was given conclusive effect because it had on it a line, the true location of which was not proven. This map was not conclusive, and a direction for the defendant in the face of all the testimony of the plaintiff tending to show a high-water line in a different location from that drawn on a map, made many years after the survey portrayed upon it, and without proof of the correctness of the survey, was an error for which this judgment must be reversed.

The plaintiff also insists that as defendant's title depends upon the location of the original high-water mark being north of the *locus in quo,* the burden of establishing that line is on it. The plaintiff seeks the recovery of land in the possession of the defendant upon the ground that the land is a part of a public highway, and this plaintiff must establish. If the highway as dedicated by the state in 1765 (*Allison's Laws,* 269) bounded on Staten Island sound, it will be carried to the sound wherever found, and if the shore is extended by deposits or filling in, the easement will be carried over the new made land to the water (*Hoboken Land and Improvement Co. v. Hoboken,* 7 *Vroom* 540), and if it was established by the plaintiff that the highway bounded on the sound when dedicated, it will, by operation of law, be extended to the present high-water line. We think the plaintiff did show that the highway as dedicated extended to the sound, for the colonial

act of 1765 dedicates the highway *through* the "Point Tract," which it is admitted bounded upon the sound.

The claim of the defendant is that the shore line of the sound has been added to by accretions or deposits since the dedication of the highway, and that the *locus in quo* lies entirely within the boundary of such new made land, and therefore it is the owner thereof under its riparian grant from the state of all the land between the original high-water mark and the present high-water mark of the sound, which grant it claims destroys whatever easement the plaintiff may have by operation of law over the land which may have been reclaimed since the highway was dedicated by the state. As this claim, if established, would result in overthrowing the plaintiff's *prima facie* case and make in favor of the defendant's title, which depends upon the true location of the original high-water mark, that being one of the boundaries of its alleged grant, we think that the duty of showing such original high-water line rests upon the defendant.

The judgment is reversed, and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Voorhees, Minturn, Bogert, Vredenburgh, Vroom, Gray, Dill, Congdon, JJ. 15.