FARMERS HANDY WAGON COMPANY, Appellee, v. CASUALTY COMPANY OF AMERICA, Appellant.

JURY:  Trial by Jury—Waiver—Withdrawal of Waiver. A court record, to the effect that *"the waiver of the jury is withdrawn,"* made upon the filing by one of the litigants of an issue-changing amendment, will be presumed to have been made on the *mutual* consent of both parties—a mutual consent evidenced by the act of the one against whom the amendment is aimed, in changing front by reason of the amendment and demanding a jury trial, and by the act of the one filing, in so doing on the ·court-imposed condition that he consent to the withdrawal.

INSURANCE:  Conditions Subsequent—Implied Waiver. A policy requirement that the insured shall give immediate written notice, with full particulars of all claims for loss, is waived by the conduct of the insurer in acting on oral notice, and so con-

ducting itself as to lead the insured to believe that written notice would not be required.

INSURANCE: Conditions Subsequent—Implied Waiver. A condition in an employer's liability policy to the effect that no liability should attach to the insurer until the insured should suffer suit and judgment on the claim, and pay the judgment, is waived by an explicit and unqualified assertion by the insurer that he was not, and would not be, liable on the claim, irrespective of the outcome of such a suit. Evidence held sufficient to present a jury question on the issue of such waiver.

EVIDENCE: Admissions—Pleadings as Evidence. *Authorized*, but withdrawn, pleadings which contain material admissions in favor of the one against whom filed, are admissible as evidence.

APPEAL AND ERROR: Trial Findings Aided by Presumption. Testimony which, in and of itself, falls short of furnishing substantial support for the findings of the trial court, may legitimately be so aided by a recognized presumption of fact as to justify the appellate court in holding that such testimony, *plus the presumption*, does furnish such substantial support. On a trial finding that certain work constituted a "repair," and not "new" construction, *held* that the testimony might be aided by the presumption that, in case of doubt, the law will presume that the work was a *repair*.

INSURANCE: "Repair" and "New Construction." On the issue whether certain work constituted a "repair and maintenance," or "new construction and an alteration," within the meaning of a policy of insurance, it would be error to instruct that "ordinary repair and maintenance" means *"the restoration to a sound state what has gone into partial decay—the restoration of a thing to its former condition, without change either in form or material."*

APPEAL AND ERROR: Non-Review of Unquestioned Instruction. Predicating error on the refusal of the court to give an instruction does not authorize a review of an unquestioned instruction given by the court on the same subject.

*Appeal from Polk District Court.*—W. S. AYRES, Judge.

APRIL 4, 1918.

SUPPLEMENTAL OPINION ON REHEARING, OCTOBER 25, 1918.

THE defendant issued to plaintiff a policy indemnifying

plaintiff against any damages it might suffer by reason of bodily injuries due to accident suffered by any employee of the plaintiff. This suit is to recover on said policy for damages sustained by plaintiff from compensation made one of its injured employees. The plaintiff had a verdict, and defendant appeals.—*Affirmed*.

*Clark, Byers & Hutchinson*, for appellant.

*Carr, Carr & Evans*, for appellee.

SALINGER, J.—I. The parties proceeded to trial before the court without a jury, and in pursuance of a stipulation to waive jury. After the hearing had continued practically to the end of the testimony, an amendment to answer offered by defendant changed the issues. Upon application of the plaintiff, the hearing was, because of said amendment, continued to a future time. In the record reciting this postponement, it is not said, in terms, that conditions were attached to permitting defendant to file said amendment; but the record does recite that "the waiver of jury is withdrawn." When the hearing was resumed, plaintiff demanded and was granted a trial by jury, over the objection of the defendant; and whether permitting a trial by jury was error, is the first question we have for consideration. It is true that, when trial by jury is waived, it is waived as to trial of all issues existing at the time, except such as may arise upon further pleadings authorized by law. And, of course, one party to the waiver cannot cancel or withdraw it without the consent of the other. *Thompson v. King*, 173 Mass. 439 (53 N. E. 910); *Henny Buggy Co. v. Patt*, 73 Iowa 485, at 489; *In re Assignment of Hooker*, 75 Iowa 377, at 380; *Hewitt v. Egbert*, 34 Iowa 485, 486; *Lazier G. E. Co. v. Yokum*, 125 N. Y. Supp. 465; *Tracy v. Falvey*, 102 App. Div. 585 (92 N. Y. Supp. 625). While this

1. JURY: trial by jury: waiver: withdrawal of waiver.

is so, and the court cannot cancel the stipulation without
the consent of all the parties to it, it is also true that it
may cancel it upon such consent. It follows that the court
may make it a condition to permitting one party to amend,
that this party consent to a withdrawal of the waiver; and
that, if the amendment be filed upon such condition, it
operates as the consent of the party who files the amend-
ment. If the other party express a willingness to try by
jury, that operates to make the consent mutual. There is
a colloquy of counsel which develops, plaintiff claims, that
mutual consent was thus effected; and defendant claims that
no conditions were attached to the permission given it to
file amendment. This colloquy affords no competent sup-
port or impeachment of the record made. That record re-
cites that "the waiver of the jury is withdrawn." Every
argument that proves that there may be no withdrawal, ex-
cept upon mutual consent, also proves that, when the record
says the waiver was withdrawn, it recites, by necessary im-
plication, that whatsoever is necessary to withdraw a
waiver was done. Since, as said, this record is in no
competent way avoided, it stands as written, and as to all
that it of necessity implies. It follows that the waiver of
jury trial was withdrawn, and that there was no error in
permitting the jury trial, upon demand of the plaintiff.

II. The contract between the parties provides that the
insured shall "give immediate written notice, with full par-
ticulars, of any and all claims which shall be made on ac-
count of a casualty covered thereby." No
such notice was given, and failure to do so is
made a defense. The appellant meets it by
pleading that the requirement was waived.
We think this claim is well made. The general agent was
notified by word of mouth. He acted upon that notice,
made no objection to the notice, and fairly led the other
party to believe, by his conduct, that the giving of written

2. INSURANCE:
   conditions sub-
   sequent: im-
   plied waiver.

notice, as stipulated in the contract, was unnecessary. The oral notice, being thus acted on, made the stipulated written notice an idle formality. In these circumstances, it is so well settled that the defendant is estopped to defend with the lack of the written notice as that we will cite no authorities for the proposition that it is estopped.

III.. It is beyond question that the contract of the parties is drawn in utter hostility to settlements between the insured and his employees. Such settlement is not only forbidden, but what the assured must do is

3. INSURANCE: conditions subsequent: implied waiver.

prescribed by the following contract provision, which defendant pleads:

"No action shall lie against the company to recover for any loss under this policy unless brought within 90 days from the date of the entry of a final judgment against the assured, after a trial of the issues on the merits in a suit duly instituted within the period limited by the statute of limitations, awarding damages on account of a casualty covered hereby, and then only provided that such action against the company be brought by the assured plaintiff for damages sustained by the assured in paying and satisfying such final judgment. This clause shall not in any way limit, restrict, or abridge the company's defenses to any such action."

It is pleaded that no suit was brought upon the claim for which plaintiff seeks to recover, and no judgment was ever entered in any suit against the plaintiff, nor has any judgment been paid by it. This allegation is admitted, but is met by a reply that "the defendant did waive its right to insist upon a compliance by this plaintiff" with said contract provision.

### 3a

It is elementary that the position of the appellee is well taken if the appellant made explicit and unqualified denial of all liability. *Washburn-Halligan Coffee Co. v. Mer-*

*chants' B. M. F. Ins. Co.,* 110 Iowa 423. To the same effect is
*Boyd v. Cedar Rapids Ins. Co.,* 70 Iowa 325. Whether there
was such denial is ordinarily a question for the jury. See
*Robinson v. Pennsylvania F. Ins. Co.,* 90 Me. 385 (38 Atl.
320). And where there is an explicit denial of all liability,
and thereupon a refusal by the insurer to defend, it has been
held, in cases where contract agreement substantially like
the ones found in this policy were present, that a waiver
had been effectuated. See *St. Louis Dressed B. & P. Co. v.
Maryland Cas. Co.,* 201 U. S. 173 (26 Sup. Ct. Rep. 400) ;
*Southern R. News Co. v. Fidelity & Cas. Co.* (Ky.) 83 S. W.
620; and *Butler Bros. v. American Fid. Co.,* 120 Minn. 157
(139 N. W. 355). The question remains whether the jury
here can be sustained in finding there had been a waiver.
It seems to be wholly undisputed that, at one time, the gen-
eral agent of the defendant took the position that the de-
fendant was not liable, because the accident for which the
plaintiff made settlement was not covered by the policy is-
sued, and that defendant was not liable in any event on
account of said policy, and would not be required to give
the accident, or any suit on account thereof, any attention.
If this were all, it may not be questioned that we cannot
interfere with a jury finding that there was a waiver. But
it is the fact that the same general agent later wrote the
defendant what was, in effect, a statement that the insur-
ance company was not liable, because the plaintiff was not
liable. If this letter were all, and is the act of the defend-
ant company, there would be no waiver; because such letter,
instead of discouraging a contest by suit, in effect urges
that the insured should contest, and that, if it did, the in-
surer would be found not liable, because the injured em-
ployee would not recover. But this letter was not written
by the person who was general agent, in the capacity of gen-
eral agent. He undertook the investigation upon which he
reported in this letter as a private individual, and as a mat-

ter of accommodation, and made it clear that whatsoever he
did in making such investigation or reporting upon it was
not the act of the defendant. Nor is that all. After this
letter was written, an answer was filed, which urged that
the defendant was under no liability whatever, and in no
event bound to defend or to do anything on account of the
accident for which the insured sought indemnity. Up to
this point, it may surely be said that a jury was authorized
to find that the insured was justified in settling without
making a contest, and that the defendant may not now say
it should be relieved from liability because the insured did
not resort to a contest to get a basis for reimbursement by
the defendant, when the defendant had said it would not
pay, no matter what was the outcome of such contest.

### 3b

But it is said that the answer to which we have referred
was withdrawn, and that, when later the plaintiff in-
trodúced this withdrawn pleading in evidence, it was error
to receive it. The withdrawn pleading of-
fered in testimony contained an admission
that, at one time, the insurer had denied
all liability, and had thus waived the right
to stand upon the provision of the contract that the in-
sured must make a contest in court. Therefore, its recep-
tion in evidence was rightful. The pleading in question
was presumptively authorized by the defendant, and on its
face admitted matter material to the case of the plaintiff.
With this pleading in evidence, the defendant harked back
to the original position of its general agent: that it was
under no liability. And if there be anything in the letter
subsequently written by the agent which can be said to qual-
ify the repudiation originally made by him, the subsequent
filing of this answer, which once more made explicit denial
of liability, was final; and, as said, coupled with the testi-

4. EVIDENCE: ad-
missions: plead-
ings as evi-
dence.

mony of the original repudiation by the general agent, it made waiver a jury question.

But this general agent testified he did not know that this pleading contained this particular paragraph or any like allegation, until long after the pleading was filed. We have no disposition to deny that the admissibility of the pleading rests upon the theory that it is an admission against interest, and that no admission is binding unless the same be understandingly made. Nor do we overlook *Schaeffer v. Anchor M. F. Ins. Co.*, 113 Iowa 652 and 133 Iowa 205, followed, in effect, in *Corbin v. McAllister*, 144 Iowa 71, 79. These hold that this presumption of authority is but a fact argument, and that, where there is undisputed affirmative testimony that there was no authority, then the admission in such pleading does not go to the jury. In other words, these cases hold that, where a mere inference of fact is met by *undisputed* testimony that the facts are contrary to the inference, there is no conflict for a jury between such inference and such affirmative testimony. Now, in the *Schaeffer* case, the affirmative testimony was not disputed. The admission which was repudiated conceded away the cause of the plaintiff; and the claim that the filing was due to mistake, and was without authority, was proved almost to a demonstration, because the testimony that there was such mistake and such lack of authority was corroborated by the fact that otherwise we must have held that the plaintiff deliberately and knowingly authorized a pleading which destroyed the case of the party filing such pleading. Just the opposite is the situation here. The defendant began by a statement that it was under no liability. The answer that was filed on its behalf was not an admission destroying its case, but was in harmony with said position in its own defense and for its own advantage that it had taken from the beginning. In one word, unlike the situation in the *Schaeffer* case, the testimony that the answer was filed without

authority is *not undisputed*.  It is strongly disputed by the circumstances to which we have referred, by the fact that the answer is not destructive of the claims of the defendant, but is a harmonious following out of the positions taken for the benefit of the defendant.

### 3c

As we understand it, there is no contention that the settlement made by the plaintiff was improvident.  And with the agreement to make judgment upon contest a condition precedent waived, there is no reason left why the defendant should not reimburse the plaintiff.

It follows that the judgment of the trial court must be *—Affirmed.*

PRESTON, C. J., LADD and STEVENS, JJ., concur.

### SUPPLEMENTAL OPINION ON REHEARING.

SALINGER, J.—I.  For some reason, the original opinion gave no consideration to two points presented.  The appellant contends that, as matter of law, the work upon which the employee, Pickett, was engaged, was not ordinary repairs and maintenance, but was new construction, and an alteration

5. APPEAL AND ERROR: trial findings aided by presumption.

of a building or plant.  If that be so, the policy did not attach to injury sustained by Pickett.  The point must be considered with application of the ordinary appellate review rule that there will be no interference if the finding below has any substantial evidence in its support.  That Pickett was not engaged in alteration is supported, for one thing, by presumption: that is to say, "mere doubt will be resolved in favor of 'repair and maintenance.'" *Ross v. Sheldon,* 176 Iowa 618, at 624.  In that case, we declare there is such presumption, and:

"The line of demarcation between repair work on one hand and construction work on the other is not always

easily discernible. Repair often, if not usually, involves more or less construction and substitution and likewise involves betterment and improvement. * * * The trend of the cases thus far decided indicates that labor and betterment upon an interstate line of railway will not be deemed as new construction work unless it is clearly such."

Applying this to the evidence, we cannot say that the verdict which involves a finding that the work done by Pickett was not an alteration is so utterly lacking in support as that it must be set aside.

II. The remaining complaint is presented as follows: In a point "relied on for reversal," it is said:

"The court erred in failing to construe the contract or policy, and to define the words 'alteration' and 'ordinary repairs and maintenance,' as used in said policy, as requested by defendant in its third requested instruction."

6. INSURANCE: "repair" and "new construction."

This is not a claim that there was error because said words were not construed at all, and should have been construed in some manner, but is an insistence that the right definition was offered by defendant, and that no equally correct definition was given. In the petition for rehearing, this complaint seems to be broadened; for it is there said that, "if the question aforesaid was submitted to the jury, it was the duty of the court to instruct the jury as to the meaning of the words." Brief Point 6, the only one on the proposition, is as follows:

"It is the province of the court to construe a contract, and give the meaning of the terms used therein; and the court should have construed and defined the terms 'alteration' and 'ordinary repairs and maintenance,' as requested by the defendant."

In our opinion, the sole question presented at this point is whether the court should have given Instruction 3, offered by the defendant. In it, "alteration" was defined to

mean "a modification or change in a building already constructed; a change or substitution of one thing for another, either in form or material;" and "ordinary repairs and maintenance," to be "the restoration to a sound state what has gone into partial decay or dilapidation," and to mean "to restore a thing to its former condition, without changing either the form or material." The court charged that, in determining whether the work done by Pickett came within the policy, the jury should "give to said terms their usual and ordinary meaning; and if they failed to find that Pickett was engaged in making ordinary repairs of the premises and plant of plaintiff, which repairs would include the care, custody and maintenance of said premises and plant, but was engaged in the construction of additions to or alterations of said premises and plant, then they will find for the defendant."

No exceptions were taken to this instruction; wherefore, the only thing that appellants may complain of is not that the instruction given was, in itself, erroneous, but that Instruction 3, offered by the defendant,

7. APPEAL AND ERROR: non-review of un-questioned instruction.

should have been substituted for the Instruction given. As said, the complaint is not that something that needs defining was not defined at all; and we express no opinion on whether the terms in question are of such character as that the court was bound to define them. But though it was abstractly sufficient to tell the jury to give said terms their usual and ordinary meaning, still defendant may complain that a proper enlargement of such definition was not added. So the question finally resolves itself into whether defendant offered a correct definition. According to the instructions offered by it, the work of Pickett was not within the policy while he was employed upon any modification or change in a building already constructed, or upon "a change or substitution of one thing for another, either in form or mate-

rial;" and his work was within the policy only if he was injured while he was engaged in restoring something to a sound state "that had gone into partial decay or dilapidation,"—if engaged in restoring a thing to its former condition "without change either in form or material." Under this offered instruction, the policy would not attach if a wooden panel was sawed out of a door frame and a glass panel substituted therefor, because that would be a "substitution of one thing for another" in material. If an ordinary two-sash window had been taken out, and the space filled by two narrow glass windows, running for the length of the frame and fastened by hinges, the policy would not cover the work, because it would be a change in form, or substitution of a thing in one form for something formed differently. In our opinion, one might be engaged in ordinary repairs and maintenance, though doing something other or more than restoring to a sound state what has gone into partial decay, and might be so engaged though he did not go so far as to restore a thing wholly to its former condition, or went somewhat beyond so restoring.

What has been said concerning a presumption that work is repair, rather than alteration, applies as well on the question whether the definition offered by the defendant is the correct one.

We are of opinion that the instruction offered by the defendant did not state the law, and was, therefore, rightly refused. It follows that the petition for rehearing should be overruled.

PRESTON, C. J., LADD and STEVENS, JJ., concur.